JUDGE LINDSAY
delivered the opinion of the court.
On December 14, 1859, appellees, who claim to be the heirs-at-law of Alexander Brewster, deceased, brought a suit in the Crittenden Circuit Court against appellants and others to recover possession of a tract of four hundred acres of land situated in said county. After the institution of said action, John Ford, one of the original defendants, died, and revivor was had against his widow and heirs. The action was afterward dismissed as to all the defendants except Anne Harman and Ford’s heirs. These parties, among other defenses, pleaded and relied upon the fact that before the action was commenced —while they, the appellants, were in the actual adverse possession of the land in controversy — the appellees had sold the same to one Franks, and executed to him their title-bond therefor, in which they agreed and stipulated that they would prosecute this action for his benefit, and that the same was being done; which contract and agreement they insisted was within the inhibitions of the champerty act, and a bar to their recovery.
Upon the trial in the court below Franks was examined as a witness touching this defense, and it was proven by him that he did make the purchase from S. E. Brewster, who professed to have authority from all the heirs to sell; that all parties were apprised of the claims and adverse possession of ' appellants; and that the bond for title executed to him by said S. E. Brewster bound the appellees to prosecute this action against the parties in possession, and to put them off, and then to deliver possession to him; that within two weeks after said contract of sale was made they did begin this action in pursuance to the same. He further states that in 1866, nearly seven years afterward, the contract was rescinded upon the advice of the lawyers who were prosecuting their suit; and further, that he had on two or three occasions advanced money to the Brewsters to defray the expenses of the litigation.
*357 Upon this evidence the court, at the instance of appellees, instructed the jury that, notwithstanding the actual adverse possession of appellants at the time of the sale to Franks, the same was only void, and presented no obstacle to their recovery in this action; and that if the contract of sale to Franks had in good faith been rescinded as to the lands claimed by appellants, then the law of champerty did not apply at all. To all of which exceptions were properly taken.
Sec. 2, chap. 12, Revised Statutes, declares all sales and conveyances of any land of which any other person at the time of such sale, contract, or conveyance has adverse possession to be null and void. It is therefore clear that this action could not have been prosecuted in the name of Franks, the real party in interest; and it seems to us that, when the reason of the law is considered, it is equally clear that his champertous vendors could not maintain it in their names for his benefit.
A different construction would destroy the efficacy and defeat the objects of the act. The aim of the statute was to protect “bona fide occupants of land against vexatious litigation growing out of champertous contracts which tend to generate suits that otherwise, in many cases, would never have occurred. . . . The peace of society and the repose of occupants were alone consulted by the legislature; and these would be as liable to be jeoparded, and would be as often disturbed, since the enactment of the statute as before, if the only constructive effect of it should be to change merely the ordinary style of suits by substituting the name of the champertons vendor for that of his vendee. ... As the law considers the body rather than the shadow, and substance rather than form, the beneficial or acting party is generally, for all practical or sxibstantial purposes, deemed the real party to a suit; and therefore whatever would destroy or bar his right may generally be pleaded in bar of a suit brought for his benefit.” (Caldwell v. Spriggs’s heirs, 7 Dana, 36.)
*358 Section 1 of the act of 1824 has frequently received this construction by this court, and section 2 of chapter 12 of the Revised Statutes is but a substantial re-enactment of the same. It is true the latter portion of section 1 of the act of 1824, which provides that no right of action shall accrue to either party to a champertous contract, is omitted in the present statute; but the decisions of this court under said act have never been based upon this positive inhibition, but the reason of the law and the objects sought to be accomplished have alone been considered. To give a different construction to the present statute would., be to defeat the evident intention of the legislature, and to enable parties to reap the benefit of contracts made in open defiance of a positive statute. Had the parties in good faith abandoned the contract before the action was begun, we do not doubt but that it could have been maintained by the appellees; but the proof is that it was not abandoned until 1866, and then only because the parties were advised that they could not possibly recover unless it was rescinded. It therefore follows that if the sale was made to Franks by S. E. Brewster with authority from the rest of the appellees, or if they ratified the same after it was made, or voluntarily become parties to this action, and permitted it to be prosecuted in their names for the purpose of effectuating said champertous sale, then the law was for the appellees, and the jury should have been so instructed. We do not agree that the rescission of the contract in 1866 can be made to relate back to the commencement of the action, and it was error to instruct the jury that said rescission, because made in good faith, was sufficient to take the action out of the purview of the statutes against champerty.
For the errors indicated the judgment is reversed, and the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.