CASE  37.—ACTION  BY  JOHN  L.  MEADE  AGAINST  JOHN RATLIFF TO RECOVER LAND.—April 21, 1909.

# Meade v. Ratliff

Appeal from Pike Circuit Court.

J. M. J. STEWART, Special Judge.

Judgment  for  defendant,  plaintiff  appeals—Reversed.

1.  Champerty  and  Maintenance—Grants  of  Land  Held  Adversely.—A deed conveying land held adversely is not void as being within the champerty statute, but only voidable at the instance of the parties in adverse possession, and one claiming under a subsequent deed from the grantor can not recover the land on the ground that no title passed by the former deed.

2.  Champerty  and  Maintenance—Grants  of  Land  Held  Adversely.—A deed conveying lands held adversely is champertous, though made in good faith and for valuable consideration; but the parties may rescind it, and this right is not affected by St. 1909, Sec. 216, declaring that neither party to a contract made in violation of the statute shall have any right of action thereon, which applies only to contracts or conveyances made in consideration of services to be rendered in the prosecution or defense of any suit, whereby the thing sued for is to be taken for such services.

Meade v. Ratliff.

3. Champerty and Maintenance—Grants of Land Held Adversely.—The sufficiency of evidence introduced by the plaintiff in ejectment to show that a champertous deed by his ancestor was rescinded by the parties is a question for the jury.

4. Adverse Possession—Effect—Extent of Possession.—An entry, without color of title, on a parcel of land embraced within a patent boundary claimed by another, who is in actual possesion of the whole, does not oust him from the possession thereof, except to the extent of the actual inclosures made by the person making such entry.

E. D. STEPHENSON, F. W. STOWERS and HAZELRIGG & HAZELRIGG for appellant.

As a brief summary of the question, we submit:

First: That the judgment in the case of Ferguson v. Ratliff has nothing to do with the present case. The conveyance from Rhodes Meade to S. W. Ferguson was absolutely void, or even if voidable, merely the fact can not be denied that Ferguson nor any one claiming under and through him have ever made any claim whatever under that old conveyance.

Second: The old judgment was not binding as res adjudicata upon Rhodes Meade, or those claiming through him, as it was effective for the sole purpose of determining that as against Ferguson, Ratliff was in the occupancy of the land at the time the conveyance was made.

Third: Whether the deed of 1881 from Rhodes Meade is champertous is not important to the trial of this case as he could maintain it as the heir of Rhodes Meade. On the other hand even if Ratliff could show an occupancy of the land this would not be sufficient, as he must show adverse possession.

Fourth: It was the duty of the court to have submitted the question of adverse possession to the jury with instructions defining adverse possession.

AUTHORITIES CITED.

Cardwell v. Sprigg, 37 Ky. 36; Graves v. Leathers, 17 B. M. 665; Crowley v. Vaughn, 11 Bush, 517; Fort Jefferson Improvement Co. v. Dupoyster, 108 Ky. 802; Altemus v. Nickell, 115 R. 506; Westenfield v. McDonald, 30 R. 1034; May v. Keaton, 23 R. 1052; Krauth v. Hahn, 23 R. 1261; Shackelford v. Smith, 35 Ky. 232; West v. McKinnney, 92 Ky. 638; Interstate Investment Co. v. Bailey, 29 R. 468; Beattyville Bank v. Pryse, 25 R. 807; Rice v. West, 19 R. 832; Cameron v. Beatty, 6 R. 589.

YORK & JOHNSON, attorneys for appellee.

We submit:

1. That appellant wholly failed to exhibit a legal title to the land.

2. The deed from Rhodes Meade to his son, the appellant, was champertous.

3. The appellee was in the actual possession of the land at the time of the conveyance by Rhodes Meade to his son, and the court was, therefore, correct in directing a finding for appellee on that ground.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant sued appellee in ejectment to recover about 100 acres of land. On the trial the lower court gave a peremptory instruction to the jury to find for appellee. The only question necessary to be considered is whether there was any evidence introduced by appellant sustaining his claim to the land. It appears that in the year 1844 there was issued by the Commonwealth a patent to Chas. Trout covering about 300 acres of land. This patent has a well marked and defined boundary. Appellant's testimony shows that this patent boundary includes the land in contest. Appellant introduced as evidence this old patent and the conveyances intervening between the patentee and the one which conveyed the land to Rhodes Meade, the father of appellant. In 1881 Rhodes Meade conveyed to appellant, his son, the whole of this patent boundary. The testimony, without contradiction, shows that the patentee and the intervening purchasers thereof lived within the patent boundary and claimed to the extent thereof from soon after the date of the patent to the time of the trial in the lower court. Their inclosures, however, did not include any part of the land in controversy. About the year 1871, one Ratliff, father of appellee, entered within this patent boundary and erected a cabin and inclosed four or five acres of land around it, and at another point inclosed about three acres. Since that date no part of the land in contest has ever been cleared or inclosed. Immediately prior to the year 1871, Rhodes Meade conveyed the land in

contest to one Ferguson, who instituted an action against Ratliff, father of appellee, to recover it. Ratliff interposed a plea of champerty and succeeded in defeating Ferguson in the lower court, and no appeal was ever taken. No further proceedings were had to oust Ratliff, nor was there any other conveyance made of the land, until Rhodes Meade made the conveyance to his son in 1881. The father remained in possession of the land with his son until 1896, at which time the father died. This action was brought in 1906 by appellant to oust appellee from the possession of the 100 acres. Appellee denied the ownership of the land by appellant, and alleged ownership in himself, and interposed a plea of champerty as to his title of actual adverse possession of the land for more than 15 years, and pleaded the former judgment in the case of Ferguson, the vendee of Rhodes Meade, against the father of appellee, as a bar to this action. Appellee concedes that this last defense cannot apply to this case, for neither appellant nor his father, Rhodes Meade, were parties to that action.

We are not called upon nor can we determine whether or not appellee is the owner of the land in contest, for he was not put to the necessity of introducing testimony on the trial to show by what right he claimed to own the land. What we have stated with reference to the property appears from appellant's testimony alone. Appellee also claims: That, when Rhodes Meade conveyed this 100 acres of land to Ferguson, the title passed from him to Ferguson, although the deed was afterwards declared void in the action of Ferguson against appellee's father; that when he attempted to convey to appellant, his son, in 1881, he had no title to pass to him, and therefore the lower court properly instructed the

jury to find for appellee. Appellant contends that, as the deed was champertous and void, no title passed, and therefore remained in Rhodes Meade. Some of the cases tend strongly to support this theory, but other and later cases construing the statute establish what we conceive to be a better principle. These opinions properly hold that the champerty statute, in so far as it applies to the sale and conveyance of real estate, was enacted for the benefit of those in the adverse possession and claiming the land. It leaves the vendor and vendee in the position they placed themselves by the sale and conveyance.

In the case of Ft. Jefferson Improvement Co. v. Dupoyster, 108 Ky. 792, 51 S. W. 810, 21 R. 515, 48 L. R. A. 537, the court, in considering the effect of a champertous conveyance, said: "Taking this view of the case, counsel contends that the deed is therefore absolutely void, as being within the champerty statute, and respectable authority is cited sustaining counsel's position; but, construing the statute as a whole, and in view of the decision of this court in the case of Luen v. Wilson, 85 Ky. 503, 3 S. W. 911, 9 R. 83, we are of opinion that the deed is not void, but only voidable at the instance of the parties in adverse possession." In the case of Luen v. Wilson, supra, the court said: "It has been held by this court in more than one case that, if one who has previously sold land to another · seeks to recover it, he cannot maintain his action upon the ground that the sale was champertous. The champertous contract must be abandoned or rescinded in good faith before he brings his action. Hobson v. Hendrick (November 12, 1885) 7 Ky. Law Rep. 362; Harman v. Brewster, 7 Bush, 355. * * * In such case the ap-

pellant can rely upon the still existing champertous contract. The law of champerty was intended as a shield to the possession, and not as a weapon of offense, as a defense to the remedy sought by a plaintiff, and a grantor after he has conveyed property adversely held cannot, without first rescinding or abandoning the contract in good faith, be heard to say that it was champertous, and it cannot therefore affect him. This is the right of the occupant, and his protection was clearly the aim of the statute.''

This construction of the statute is a just one. Often such conveyances are made in the best faith, and the purchaser pays a valuable consideration. Nevertheless the conveyance is champertous if there be an adverse claimant in possession. The parties in such cases should be allowed to rescind and put themselves in statu quo. Section 216, Ky. St, declaring that ''neither party to any contract made in violation of the provisions of this chapter shall have any right of action or suit thereon,'' has no application to a case like the one last stated. The section referred to applies only to contracts or conveyances made in consideration of services to be rendered in the prosecution or defense, or the aiding in the prosecution or defense, in or out of court, of any suit, whereby the thing sued for, or any part thereof, is to be taken or received for the services or assistance. The testimony in the case at bar did not show that the conveyance from Rhodes Meade to Ferguson was of the character described. It was such a conveyance as could be rescinded or abandoned. We do not want to be understood as holding that there was sufficient evidence introduced by appellant to show that this deed was rescinded or abandoned by the parties. This was a question for the

jury to determine. It is sufficient to say there was some evidence introduced to that effect. Green Meade, a brother of appellant, who has never had any interest in the matter in controversy, stated that, soon after the trial of the case of Ferguson against Ratliff, Ferguson told him that he would have nothing more to do with the matter, that he stated, in effect, that he had no interest in the land, and that Rhodes Meade could sue for it if he wanted to. This tended to show a rescission or abandonment of the conveyance made by Rhodes Meade to Ferguson. Rhodes Meade, afterwards, in the year 1881, conveyed the land to appellant. He claimed the land as his until this conveyance to appellant, his son, and the court erred in not submitting this question to the jury for its determination. Under the proof as introduced by appellant, his father and those under whom he was claiming had had the actual possession of the whole of the Trout patent boundary, which includes the land in contest, before appellee or his ancestors obtained possession of any part of the land in controversy. If this be true, the entrance by Ratliff, father of appellee, upon the land sued for, did not have the effect to oust Meade from the possession thereof, except to the extent of the actual inclosures made by Ratliff, unless it appears that he had a superior title to Meade.

It is our opinion that appellant's testimony made out a case for him which should have been submitted to the jury, and the court erred in giving the peremptory instruction. See Miller v. Humphries, 2 A. K. Marsh. 447, Shrieve v. Summers, 1 Dana, 239; Moss v. Currie, 1 Dana, 266. Many others and more recent decisions to the same effect could be cited.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.