## Meade v. Ratliff.

(Decided October 15, 1914.)

Appeal from Pike Circuit Court.

Appeal—Finding of Chancellor—Conflicting Evidence.—In an equitable action, where, upon consideration of the entire record, the mind is left in doubt and it cannot be said with any reasonable certainty that the chancellor has erred, the judgment will be affirmed.

STRATTON & STEPHENSON, HAZELRIGG & HAZELRIGG, F. W. STOWERS and HORATIO HOWARD for appellant.

YORK & JOHNSON for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This is the second appeal of this case. The opinion on the former may be found in 133 Ky., 411.

On the second trial the case was, by consent of the parties, transferred to equity and tried by the chancellor, who gave judgment in favor of appellee.

The following statement of facts is necessary to a proper understanding of the questions involved: The suit is one in ejectment, and involves the ownership of about 100 acres of land. A patent for 300 acres, covering the land in controversy, was issued by the Commonwealth to Charles Trout in 1844. By mesne conveyances, the patented boundary was deeded to Rhodes Meade, father of appellant. About the year 1876 Rhodes Meade conveyed the land in contest to one Ferguson. Ferguson brought an action against Ratliff, father of appellee, to recover the land. Ratliff interposed a plea of champerty, which was sustained, and judgment rendered in 1877 in favor of Ratliff. From that time on no further proceedings were had to oust Ratliff, nor were any other conveyances made of the land until Rhodes Meade conveyed to appellant, his son, in 1881, reserving to himself a life interest in the land. Rhodes Meade remained on the land with his son until 1900, and then died. This action in ejectment was brought by appellant against appellee in 1906. At the conclusion of appellant's evidence, the trial court directed a verdict in favor of appellee, on the ground that the deed from appellant's father to Ferguson constituted a break in appellant's

record title, and that appellant had also failed to show adverse possession of the land. On appeal to this court it was held that the judgment declaring the deed from Rhodes Meade to Ferguson champertous did not have the effect of re-investing Rhodes Meade with title, and did not give him or any grantee of his the right to sue for the possession of the land unless the champertous contract was abandoned or rescinded in good faith by the parties thereto. The court also held that the evidence on the question of rescission was sufficient to take the case to the jury, and the trial court therefore erred in directing a verdict in favor of appellee.

On the second trial evidence was heard on the question of abandonment or rescission of the champertous contract, and also on the question of adverse possession. On the first proposition the evidence on the one side tended to show that Dr. Ferguson stated that the land belonged to the Meades, and that he would have nothing further to do with it. On the other hand there was evidence to the effect that Rhodes Meade said he had sold the land to Ferguson, and that Ferguson took the chances on it. On the question of adverse possession appellee showed that his father had made two entries on the land in controversy and made improvements thereon. At one place he had had tenants who had occupied the land for a number of years. All this time his father was claiming the entire boundary of the land. Since his father's death he and his brother had been claiming the same boundary, and exercising active ownership over it. Appellant insists that appellee's evidence with respect to the boundary is not sufficient to show a well-marked boundary. It is true that his evidence on this question is not altogether satisfactory. However, the land sued for in this action is precisely the same tract of land conveyed to Dr. Ferguson, and to recover which Dr. Ferguson sued appellee's father. Appellant's father, Rhodes Meade, not only knew of that suit, but was himself a witness. He, therefore, knew the precise boundary which appellee's father claimed. Furthermore, the evidence leaves no doubt that appellant knew of the suit and of the extent to which Ratliff claimed. Although Ratliff's plea of champerty was interposed in the year 1876, and Ferguson was defeated by that plea and a judgment rendered in 1877, it was not until 29 years thereafter, during all of which time appellant and his father had full notice of the extent of

the Ratliff claim, that appellant took any steps to recover the land in controversy. The case is one where, upon a consideration of the entire record, the mind is left in doubt, and we cannot say with reasonable certainty that the chancellor has erred. In such cases it is our rule to affirm the judgment of the chancellor.

Judgment affirmed.