## Bowen v. Jameson, Sheriff, et al.

(Decided December 14, 1927.)

### Appeal from Lee Circuit Court.

1. Lis Pendens.—Where one entered on land, and claimed it under title bond from another two years before commencement of action affecting land, to which he was not made party, he was entitled to hold land unaffected by consent judgment in that action.

2. Lis Pendens.—Where purchaser's remote predecessor in title was entitled to hold land unaffected by consent judgment in action concerning title to which he was not made party, purchaser was unaffected by that judgment, being entitled to every right of his predecessor.

3. Adverse Possession.—Persons out of possession, claiming title and right to possession against persons claiming title and right to possession by over 30 years' adverse possession, had burden of proof, and must recover on strength of their own title.

4. Adverse Possession.—While one holding under deed is in possession to extent of well-defined boundary called for in deed, if he claims to that extent, and opposing party has not actual possession, he is in possession only to lines which he actually claims.

MORRIS & JONES, T. T. COPE and JOUETT & METCALFE for appellant.

G. W. GOURLEY, J. K. ROBERTS, and A. FLOYD BYRD for appellees.

Opinion of the Court by Commissioner Hobson—Reversing.

On February 15, 1847, Oliver Crawford conveyed to William Smythe 1,000 acres of land in Lee county. Washington Miller, as trustee, was cutting timber in the vicinity, and a dispute arose between him and Smythe as to the location of Smythe's lines. Smythe died on January 9, 1904, the heirs of Smythe brought a suit against Miller and the persons for whom he was trustee, praying judgment for $10,000, the value of the timber cut by Miller over Smythe's line. The defendants on November 19, 1904, filed answer denying the allegations of the petition, and pleading that Smythe had cut over on them, and praying that their title be quieted. No reply was filed until November 29, 1909. No other steps were taken until July 11, 1912, when a consent judgment was rendered, by which the land, as claimed by the plaintiffs, was adjudged to them and $150 in damages, and each party paid his own costs. On this judgment a writ of possession was issued for the land, and thereupon J. J. Wells filed an action in equity against the sheriff, alleging that he was the owner, and in possession, of two tracts of land which lay within the boundary adjudged to the plaintiffs in the consent judgment, and embraced in the writ of possession, and that he and those under whom they claimed had been in such possession for more than 30 years, claiming the land adversely; that he was not a party to nor privy to the action in which the judgment was rendered and praying that the sheriff be enjoined from disturbing him in the possession of the land. The sheriff demurred specially to the petition, on the ground that the plaintiffs who had procured the writ of possession were not made parties defendant. The circuit court sustained this demurrer. The plaintiff appealed, and the judgment of the circuit court was reversed. Profitt v. Jameson, 157 Ky. 172, 162 S. W. 801. On the return of the case to the circuit court the sheriff filed his answer, making it a cross-petition against the plaintiffs in the former suit. They appeared and filed their answer, denying the allegations of Wells' petition, and also pleading especially the proceedings had in the former suit, and alleging that Wells entered under the defendant in that suit after that action was brought and while it was pending. The amended answer pleading these facts was, by consent of parties, controverted of

record. Wells having died pending the action, the appeal is prosecuted by his heirs at law, against whom the action had been revived.

The first question to be determined is whether Wells is bound by the consent judgment entered in July 1912. That action was brought on January 9, 1904, and, if Wells did not enter on the land under Miller, etc., while the action was pending, he is not bound by the judgment. The facts shown by the record are these:

On February 25, 1899, Miller, as trustee, entered into a written contract with William Puckett, who was then living on a small tract on which his father had lived for 40 years. By the contract Puckett gave Miller the right of way for hauling timber over his land, and Miller in consideration of this, agreed to convey to Puckett "so much as 50 acres of land to be located at Jason, to fit small parcel of land held as aforesaid by said William Puckett, and to be hereafter surveyed and located as mutually agreed upon by said Miller and Puckett." In that contract Puckett also bound himself not to sell his old tract without the written consent of Miller. The paper was recorded in the circuit clerk's office, but does not appear to have been acknowledged by anybody. By a written contract, made January 22, 1902, which set out the former contract of February 25, 1899, Miller consented that Puckett might sell to William Willis "the lands referred to in said contract and to transfer to the vendee or purchaser of said land the benefit of said contract." This paper, which was duly acknowledged by Miller, and duly recorded on January 24, 1902, was assigned to Willis by Puckett. On the same day Puckett and his wife executed to Willis a title bond for all the land he claimed, including both the original tract and the tract he had got from Miller. The title bond describes the land so that it may be located, and was given in consideration of $300, $150 cash in hand and $150 due by note. Willis then entered upon the land, and lived on it until December 8, 1904, when he assigned the title bond to F. M. Townsend. Townsend having paid for the land, Puckett and wife executed deed to him on August 25, 1910, which was recorded February 7, 1911. Townsend lived on the land from the time of his purchase until he sold it to J. J. Wells, and made Wells a deed for it on March 13, 1911, in consideration of $500; $300 cash in hand and $200 due by note. This deed was lodged for record November 7, 1912, and Wells lived on the land

from the time of his purchase of it until he filed the suit above referred to.

The rule as to who is a lis pendens purchaser is thus stated in 17 R. C. L. 1028, sec. 25:

"Until there be a suit pending there can be no such thing as a purchaser pendente lite, and a person whose interests are acquired before the action is brought against his vendor will not be bound by its result. The same is true where the statute requires filing of notice to begin the lis pendens, and rights acquired before filing are not affected. Persons whose interests were acquired before the action was begun must be made parties to it, if they are to be affected by its result, and an interest acquired before the suit by a third person may be transferred after it has begun, free from the result of the litigation if the transferror is not a party thereto. And it is not always necessary to the operation of this rule that the interest existing at the commencement of the suit be clothed with the legal title, but it has been frequently held that the pendency of a suit involving the legal title to property will not affect the holder of an antecedently acquired equity so as to prevent his clothing himself with the legal title."

To the same effect see 38 C. J. 5758, secs. 95, 96, and Parks v. Smoot, 105 Ky. 63, 48 S. W. 146, and cases cited.

Willis entered on the land under the bond from Puckett in 1902, which was nearly two years before the action in question was brought. Willis entered under Puckett, claiming the land under Puckett's title bond. If Willis had remained on the land, clearly the action subsequently brought in 1904 would not have affected his rights. But, when Willis sold to Townsend, and surrendered possession to Townsend, Townsend simply stepped into Willis' shoes, and was entitled to every right Willis had. When Townsend subsequently sold to Wells, and gave Wells possession, Wells acquired under his deed every right that Townsend had. Wells is no more bound by the lis pendens of the suit against Miller than Willis would have been bound had he remained in possession of the land until the day that Wells entered.

We therefore conclude that Wells was not a lis pendens purchaser, and that he is not bound by the consent judgment rendered in the case of Smythe v. Miller, etc.

This conclusion renders it unnecessary for the court to determine whether the action was prosecuted with due diligence or whether, no lis pendens notice appearing, as required by section 2358a1, Ky. Stats., Wells, under the pleadings, is or is not bound by the judgment for that reason.

Wells brought his suit to enjoin the sheriff from disturbing him under the writ of possession. As he was not bound by the judgment in that action, he was entitled to judgment perpetuating his injunction, granted at the institution of the action. The circuit court should have so adjudged instead of dismissing the petition.

This leaves only the question of title to be determined between the heirs of Smythe in their cross-action against the heirs of Wells. The burden of proof in this cross-action is on the Smythe heirs, the plaintiffs in that action. They must recover, if at all, on the strength of their own title. While a person holding under a deed (if the opposing party has not actual possession) is in possession to the extent of the well-defined boundary called for in the deed, if he claims to the extent of such boundary, he is in fact only in possession up to the lines which he actually claims, and, if in this case Smythe recognized as the line the top of the ridge, claimed by the defendants as the line, his possession would extend no farther than the line he in fact claimed to. Heinrichs v. Polking, 185 Ky. 439, 215 S. W. 179.

Judgment reversed, and cause remanded for a new trial.