## Stephenson Lumber Co. v. Hurst et al.

(Decided June 26, 1934.)

(As Modified on Denial of Rehearing June 18, 1935.)

SAMUEL M. WILSON and WILSON & HARBISON for appellant.

A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an action to quiet title to land and for injunctive relief.

The Stephenson Lumber Company, a copartnership, filed this action in the Breathitt circuit court on the 21st day of September, 1911, alleging that it was the owner and in actual possession of a boundary of land, which included certain 280.11 acres. It charged that I. N. Patterson, and E. B. Patterson and wife, by deed, containing a covenant of general warranty, executed

and delivered by them, and accepted by it, conveyed to it the timber on a large boundary, for an agreed consideration; that at the time they did so, they had no title to the 280.11 acres. It also sought to recover of them the consideration for the timber on the 280.11 acres. It alleged that they were threatening to erect a dwelling on this acreage and place a tenant therein, and would do so unless prevented by an order of court.

The Pattersons and Hurst for defense, traversed the petition, asserted adverse title, and pleaded res judicata.

An amended petition was filed· detailing fully the title of the Stephenson Lumber Company. A motion to elect was sustained, and the Stephenson Lumber Company elected to prosecute its cause of action to quiet the title of the 280.11 acres, and prevent by injunction trespass thereon. R. A. Hurst, who was made defendant, died and the action was revived as against his heirs. A second amended petition was filed, again setting up the cause of action for the purchase price of the timber on the 280.11 acres. Issues were joined by responsive pleadings, and by taking as controverted of record the amendment setting out the source of title of the Stephenson Lumber Company.

The action was submitted for trial on the pleadings and the evidence; a judgment was entered dismissing the petition. The Pattersons and Hurst asserted in their answer title to a large boundary of land including the 280.11 acres; the Hurst heirs were adjudged the owners of it as described in the judgment, and a writ of possession was awarded.

The parties in their briefs have devoted much time and space in presenting patents as the source of their respective titles.

To dispose of the plea of res judicata it is sufficient to say that the order of court entered in Patterson v. Stephenson Lumber Company on March 14, 1920, which is relied upon as the basis of the plea, expressly states that the counterclaim of the Stephenson Lumber Company, which was based on the failure of title to the 280.11 acres, under its conveyance from the Pattersons, was "dismissed without prejudice to any future action thereon, with leave to withdraw any title papers." With this language in the order, it is unnecessary to

discuss the topic other than to say the order, itself, is a complete answer to the insistence of the plea of res judicata.

In the brief of the Stephenson Lumber Company, we find at the conclusion of its presentation of patents and argument to sustain the same as the source of its title, this language:

"The title of Wooley to the land in controversy is not derived and is not claimed to have been derived from any patent or patents granted by the Commonwealth, but said title is a title by actual adverse possession on the part of Wooley's executor and of the antecedent owners and occupants of the land from whom, by a regular succession of conveyance, Wooley had derived his title. In addition to this, it will be borne in mind that the plaintiffs contend that the defendant, I. N. Patterson, and those claiming under him, never at any time had either a good or valid title to the land in controversy, and that they were never at any time in the possession of said land, and the possession acquired by the plaintiffs of said land was acquired not from I. N. Patterson or any one claiming under him, but from the widow and executors of C. H. Wooley, deceased. It is further contended, on behalf of plaintiffs, that any paper title I. N. Patterson may have had to the land in controversy inured to the benefit of plaintiffs for the reasons hereafter to be explained."

With this admission of the Stephenson Lumber Company, we shall confine our consideration of the case to the question of its title by adverse possession, and champertous conveyance of the timber on the 280.11 acres by Pattersons to the Stephenson Lumber Company.

It is undisputed that the Pattersons and Hurst and no one under whom they asserted title to the 280.11 acres, at the time of the institution of this action or any time prior thereto, had the actual possession of the described land. The Stephenson Lumber Company, and no one for it, for the purpose of cutting the standing timber under the Pattersons' deed, entered upon the 280.11 acres. The deed of Pattersons to the Stephenson Lumber Company was executed and delivered on August

30, 1906. The executor of C. H. Wooley, in the early part of September, 1906, conveyed to the Stephenson Lumber Company a large boundary of land including the 280.11 acres. In 1889, W. A. Gunn and C. H. Wooley obtained options for the purchase of certain tracts of land from Gill Williams, J. W. Cardwell, and others. W. A. Gunn conveyed his interests in the Gunn and Wooley tracts, including the 280.11 acres, to Wooley.

In August, 1889, in accordance with the title bonds, deeds were executed and delivered to Gunn and Wooley. The several boundaries covered by their deed, embraced the "Evans Davis" and the "Gill Williams" tracts, which included the 280.11 acres. Only the westerly portion of these two tracts is involved. The controversy arises out of a conflict of a part of the easterly end of the "Hurst and Pattersons" lands, with a portion of the westerly sections of the "Evans Davis" and the "Gill Williams" land. The boundary of the 280.11 acres is made up of a part of the exterior of the "Evans Davis" and the "Gill Williams" tracts along their northern, western, and southern sides. The "Evans Davis" tract is overlapped in part by R. P. Davis, Patent Nos. 38531 and 38535, under which the Pattersons and Hurst assert title to the 280.11 acres. Probably R. P. Davis Patent No. 38551 covers a little corner of the "Evans Davis" tract.

W. E. Gunn, a son of W. A. Gunn, represented his father and Wooley in purchasing and securing deeds to the "Gunn" and "Wooley" land. At the time he obtained the option for the purchase of the land, the boundaries thereof had been surveyed and the lines had been marked, and were observed by W. E. Gunn; two or three cleared fields, a house, stable, and other improvements were on the "Gill Williams" land, and Gill Williams was living on, farming, and cultivating it at the time the options were secured. The "Gill Williams" land was located on a branch known as "Mc-Daniels Fork" or "Moorefield Fork." Many years previous to the date of the opinions, John McDaniels had obtained a patent for 50 acres in the vicinity of this branch and presumptively this accounts for the name of the branch. But the Stephenson Lumber Company asserts no title through the patent of McDaniels. At the time he secured the option for the land within the

"Evans Davis" boundary, there was a field of considerable size on the branch toward the "Gill Williams" land, which extended to the top of the mountain. "There were some improvements along the main branch" (Haggins Fork), "beginning at the lower end where there was a fence;" also some "improvements along another small branch on the right hand side."

Immediately upon the acceptance by Gunn and Wooley of deeds to the "Evans Davis" and the "Gill Williams" tracts they took possession of same by placing their tenants in the actual possession of them. Their tenants continued actually to occupy the "Evans Davis" and the "Gill Williams" tracts, under the deeds of Gunn and Wooley who continued open possession and asserted adverse title to a well marked and defined boundary as against Pattersons and the world, until they conveyed it in fee, with a covenant of general warranty, to the Stephenson Lumber Company. The Stephenson Lumber Company entered upon the actual possession through its tenants, the disputed land, adversely, continuously, and openly asserted title to the "Evans Davis" and the "Gill Williams" tracts against the Pattersons and the world, and continued to do so to the commencement of this action.

The deed to the "Evans Davis" tract of Evans Davis from Stephens Carpenter is dated May 22, 1888, and deed from Evans Davis to J. W. Cardwell, May 3, 1889; also deed from Henry Williams to Gill Williams, August 1, 1887. At the time the deeds of Gunn and Wooley were executed, it was observed that the outside boundary lines of the "Evans Davis" and the "Gill Williams" tracts were plainly marked and corresponded with the survey then being made for the purpose of executing the deeds to Gunn and Wooley. John McDaniels, age 76, J. D. Jones, age 74, and Bryson Fugate, age 71, testified that they had known the "Evans Davis" and the "Gill Williams" tracts the greater portions of their lives, and were able to describe the improvements, the occupancy, and name the occupants, from 1861 to the date of the conveyance to Gunn and Wooley, as well as thereafter. According to their testimony, residences and outbuildings used in connection therewith, cultivated land, inclosed by fences by Williams and others, were in the actual open possession of Williams and others.

The owners of the "Evans Davis" and the "Gill Williams" tracts have not testified in the action. It is not unfair to conclude from the testimony of McDaniels, Jones, Fugate, and Gunn that those who were in the actual possession of the buildings and the cleared land within these marked boundaries were asserting adverse title thereto.

It is not essential to an adverse holding under the champerty statute that the land so held shall be inclosed, and how the boundary is marked to which the holding extends is not so important, if it is well defined. Abbott v. Perkinson, 144 Ky. 495, 139 S. W. 745, Ann. Cas. 1913A, 747; Krauth v. Hahn, 139 Ky. 607, 65 S. W. 18, 23 Ky. Law Rep. 1261; Barret v. Coburn, 3 Metc. 510; Moore v. Baker, 92 Ky. 518, 18 S. W. 363, 13 Ky. Law Rep. 724. An inclosure is not generally necessary to show such adverse possession in order to invoke the champerty statute. Watson v. Wilson, 150 Ky. 27, 149 S. W. 1120. Sporadic acts of ownership are insufficient to show such possession as is necessary to invoke the champerty statute, nor can possession be extended to adjoining land to which the claimant had no claim, where inclosures nor possession of part of such land did not reach the adjoining land.

Gunn's and Wooley's grantors held deeds to the "Evans Davis" and the "Gill Williams" tracts, giving their boundary to a well marked and well defined boundary. At the date of the deed of the Pattersons conveying the standing timber on the 280.11 acres to the Stephenson Lumber Company, through their tenants, Gunn and Wooley were in the actual, open and visible possession of residences, outbuildings, and the cleared and cultivated lands within the boundaries embraced in the deed under which they occupied the "Evans Davis" and the "Gill Williams" tracts claiming title to two well-marked boundaries. To be within the champerty statute it was not necessary that the actual possession should have existed or continued for fifteen consecutive years next before the date of the Pattersons' deed conveying the standing timber to the Stephenson Lumber Company. Logan v. Phénix, 66 S. W. 1042, 23 Ky. Law Rep. 2300.

The adverse possession required by the champerty statute (Ky. Stats. secs. 210 and 211), voiding cham-

perty conveyances, must be only such open and notorious exercise of possession as to exclude another under a claim of right, and as will give the ousted claimant notice of the hostile holding. Travis v. Bruce, 172 Ky. 390, 189 S. W. 939; Lanham v. Huff, 228 Ky. 139, 14 S. W. (2d) 402; Pioneer Coal Co. v. Asher, 226 Ky. 488, 11 S. W. (2d) 116; Fordson Coal Co. v. Mills, 234 Ky. 64, 27 S. W. (2d) 382; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399; Jones v. O'Connell, 237 Ky. 219, 35 S. W. (2d) 290.

Gunn and Wooley being in actual possession, their recorded deeds were constructive possession to the extent of the boundary described in their deed. In the circumstances, the deed of the Pattersons to the standing timber was champertous. Lawhorn v. Hicks, 247 Ky. 205, 56 S. W. (2d) 996; Curry v. Cox, 208 Ky. 653, 271 S. W. 700. The champerty statute does not have to be pleaded. The facts to establish that a conveyance is champertous may be proven under the general issue. Reynolds v. Binion, 177 Ky. 189, 197 S. W. 641; Arrington v. Sizemore, 241 Ky. 171, 43 S. W. (2d) 699; Chrisman v. Greer, 239 Ky. 373, 39 S. W. (2d) 676; War Fork Land Co. v. Carr, 236 Ky. 453, 33 S. W. (2d) 308.

There remains to be considered the title of the Stephenson Lumber Company under its claim of adverse, open, hostile, continuous possession, of the "Evans Davis" and the "Gill Williams" tracts for fifteen years next before the commencement of this action. It should be observed that the Stephenson Lumber Company was conveyed by the Pattersons only the title to the standing timber, and by the deed of the executor of Wooley it was conveyed the soil and the timber; and therefore under the Pattersons' deed it could not acquire possession except for the purpose of removing the standing timber, which right it did not exercise under the Pattersons' deed. The issue is, is the title by adverse possession of the soil and timber in the Stephenson Lumber Company, and those under whom they claim, superior to the title of the Hurst heirs, through conveyance deducible from the commonwealth. The Stephenson Lumber Company must recover on the strength of its own title, and not on the want or weakness of title of Hursts. Crawford v. Crawford, 231 Ky. 675, 22 S. W. (2d) 93.

"Adverse possession," under the champerty stat-

ute, is not identical with adverse possession under the statute of limitations. The latter must be adverse, open, notorious, and continuous for a period of not less than fifteen years next before the commencement of the action. The recorded title of the "Evans Davis" and the "Gill Williams" tracts may be traced by the record as presented herein to the years 1889 and 1887, respectively; that of Hurst heirs is traceable to the commonwealth.

To defeat title and constructive possession under a prior patent, a party claiming under a subsequent deed must prove actual, adverse, open, and continuous possession on the part of himself and vendors without lapse of possession for as much as fifteen years before suit. Brown v. Wallace, (Ky.) 116 S. W. 763; Hall v. Blanton, 77 S. W. 1110, 25 Ky. Law Rep. 1400; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062. Also one who has entered upon and cleared land to which he has no title may not extend his possession by merely marking boundary around it. Altoona Trust Co. v. Ison, 170 Ky. 706, 186 S. W. 515; Id., 171 Ky. 217, 188 S. W. 344; McCoy v. Thompson, 172 Ky. 794, 189 S. W. 1139. This rule prevails where it goes upon land constructively in the possession of another and merely marks the boundary. Smith v. Berry, 202 Ky. 502, 260 S. W. 348. Nor can possession be extended beyond the boundaries of land on which the residence is maintained by merely marking a line through the boundary beyond the tract. Fields v. Wells, 224 Ky. 620, 6 S. W. (2d) 1110; Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075. To acquire title by adverse possession, the possession must not only be actual, but so continued as to furnish a cause of action every day during the whole period prescribed by the statute. Courtney v. Ashcraft, 105 S. W. 106, 31 Ky. Law Rep. 1324; Bibb v. Daniels, 183 Ky. 659, 210 S. W. 454; Mounce v. Hargis, 211 Ky. 761, 278 S. W. 107; Noe v. Russell, 213 Ky. 746, 281 S. W. 1033.

A co-ordinate rule is, when in adverse possession under a color of title, claimed to a well marked and well defined boundary, and the possession is open, hostile, notorious, and continuous for a period of fifteen years next before the commencement of the action, the occupant has a perfect title by adverse possession. Conley v. Breathitt Coal, Iron & Lumber Co. (Ky.) 113 S. W. 504.

As early as 1833 in Moss v. Currie, 1 Dana, 266, the rule was stated that where one enters the possession of land, claiming title by deed, his possession by law will be in accordance with the boundary stated in the deed. Harrison v. McDaniel, 2 Dana, 348; Hillman Land & Iron Co. v. Marshall et al. (Ky.) 119 S. W. 180; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; Burchett v. Clark, 162 Ky. 586, 172 S. W. 1048; Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S. W. 513; Bowen v. Jameson, 223 Ky. 493, 4 S. W. (2d) 401; Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S. W. (2d) 659; Turner v. Turner, 237 Ky. 257, 35 S. W. (2d) 289. The rule that two persons claiming title may not be in constructive possession at the same time is inapplicable to actual physical occupancy of property. County Board of Education for Jefferson County et al. v. Mill Creek Methodist Church, South, et al., 242 Ky. 147, 45 S. W. (2d) 1026. In the absence of actual possession the law deems him to be in possession who has the best right to the possession. Wilson v. Chappell, 244 Ky. 521, 51 S. W. (2d) 669. Possession need not continue under the same ownership for the whole fifteen years (Shannon v. Kinney, 1 A. K. Marsh. 3, 10 Am. Dec. 705); it may be in different persons. It must, however, be shown that a privity existed between them. Winn v. Wilhite, 5 J. J. Marsh. 521; Miniard v. Napier, 167 Ky. 208, 180 S. W. 363; Gray v. Wells, 239 Ky. 432, 39 S. W. (2d) 651. But it is not essential to establish privity between successive possessors of land. H. B. Jones Coal Co. v. Mays, 225 Ky. 365, 8 S. W. (2d) 626.

A change of tenants is no evidence of break in continuous possession. Turner v. Begley, 239 Ky. 281, 39 S. W. (2d) 504. Nor will periods of vacancy incident to change of possession or occupancy by owners or tenants of owners constitute interruption of possession, where only of reasonable duration. Eversole v. Roberts, 239 Ky. 532, 39 S. W. (2d) 986.

The deeds of Gunn and Wooley are dated in 1889. This action was filed September 11, 1911, or twenty-two years after the dates of their deeds. It is not satisfactorily shown that the actual possession of Gunn and Wooley, through their tenants, and that of the Stephenson Lumber Company, through its tenants, was adverse, open, and continuous of the "Evans Davis" and the "Gill Williams" land of which the 280.11 acres are a

portion, by actual visible possession of any portion of the lap, within the boundary contained in the patents under which Pattreson holds title thereto. The recordation of their deeds may be considered as constructive notice of that portion of the boundary contained in their deeds, but it is not available for the purpose of affecting the title of Patterson under prior patents.

It is our conclusion that the title, by adverse possession, of the Stephenson Lumber Company was not perfect at the commencement of this action.

The Stephenson Lumber Company, to avert this conclusion, insists that Hurst's title is derived from a junior patent which is void, under section 4704, Ky. Stats. Givens v. U. S. Trust Co., 251 Ky. 587, 65 S. W. (2d) 682.

The testimony tending to establish that the land covered by the Hurst patent had been previously patented is indefinite, as well as conflicting. The chancellor accepted that in behalf of Hurst. A reading for ourselves the testimony bearing on this question leaves the mind in doubt, and adhering to the familiar rule that where in doubt as to the facts established by the testimony of the witnesses to give weight to the judgment of the chancellor, we are not prepared to say that the land covered by the Hurst patent is also covered by senior patents.

In their brief, the Hurst heirs discuss so much of the cause of action of the Stephenson Lumber Company as concerns the claim asserted in the petition for the recovery on account of the failure of the Patterson title to the standing timber on the 280.11 acres.

The Stephenson Lumber Company, in its brief, complained of the disposition of its cause of action for failure of the title of the standing timber on the 280.11 acres. These errors, if any, became immaterial, since it has no title to the 280.11 acres.

A review of the evidence convinces us that the deed of the Pattersons for the standing timber is prior and superior to the title of the Stephenson Lumber Company to the 280.11 acres.

For this reason the judgment is affirmed.

The whole court sitting.