## Smith v. Bryant.

(Decided Oct. 22, 1935.)

B. J. BETHURUM for appellant.

H. C. KENNEDY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an action of ejectment. S. B. Smith, by deed dated May 9, 1928, acquired title to a certain tract of land, situated in Pulaski county, Ky. In December, 1915, William Bryant acquired title to a tract which was originally a part of a boundary owned by Smith's prior grantor. The titles of Smith and Bryant are derived from a common source. Smith's position is that the boundary contained in his deed embraces the 15 acres in dispute. Bryant asserts the 15 acres are embraced in his deed. He also claims title to it by adverse possession and that Smith's deed is champertous. The Smith deed excepted 25 acres of the boundary described in it, which he asserts is the land covered by Bryant's deed, and that the latter's deed does not include the disputed land. The case could and would have been clarified, if the parties had caused the boundary in their respective deed to be surveyed. The Bryant deed sets out the boundary and states that it contains 25 acres. A survey of the boundary as it is contained in this deed would have demonstrated whether the acreage exceeds 25, the number called for in his deed, as well as have shown whether the metes and bounds in his deed included the disputed land. Smith's deed calls for 150 acres more or less, "excluding any of the tract that may have been previously conveyed by R. A. Johnson, not exceeding 25 acres." To correctly and properly determine the issues presented by the pleadings, it is unnecessary to determine whether Smith's deed includes the disputed land and whether Bryant's deed includes it. The date of Bryant's deed is conceded by Smith. Bryant took actual possession of the land "about 10 or 12 years ago"; put a fence on it and had been in possession of it since that time. These facts were testified to by Smith. He also stated on the witness stand that at the time Hamilton owned the tract to which he (Smith) has deed, "Bryant went on this part of it and took possession of it." He further admitted that there were 40 or 50 rods of fence on the line between his land and Bryant's, and where the fence stopped there were two or three strands of barbed wire continuing for some distance. Hamilton, Smith's vendor, testified that in 1920 Bryant sold some timber on his land; Gooch was cutting it; Bryant asked Hamilton to meet him and have Henry Davidson run the line between their lands. Hamilton's language is: "We had that done so we would not get over the line cutting the timber." Later,

Bryant informed him that he wanted to put up a fence on the line which had been run by Davidson, and his language is: "We put up a fence for about 20 rods."

Hamilton was asked and answered thus:

"Q. At the time you conveyed to Smith, tell the jury whether or not you were in possession of that 13 acres? A. Yes, sir, I was. * * *

"Q. Bryant took possession of the land run by Davidson? A. Yes, sir.

"Q. Did Bryant have possession of it at the time it was run (by Davidson)? A. Not that I know of."

The existence of the woven wire fence for a distance of 40 or 50 rods on the line claimed by Bryant, and of the barbed wire extending from the point where the woven wire ends on the line to the corner claimed by Bryant, is the line which Hamilton and Bryant agreed to have, and had, Davidson to run for them. The line from the point at which the barbed wire ends to a stone corner claimed by Bryant, Hamilton concedes, was marked by him and Bryant at the time of the Davidson survey. Except the mere statement of Hamilton that he was "in possession" of the disputed land at the date of his deed to Smith, the testimony of the parties and their witnesses agree that Bryant was in the actual, adverse, open possession of the disputed land inclosed by the barbed wire fence, to the two or three strands of barbed wire, and from the end of the barbed wire to the marked line onto the marked corner claimed by Bryant, from the date of Davidson's survey to the institution of this action. It is established by the testimony of Smith and his witnesses, except Hamilton's above statement, and by the testimony of Bryant and his witnesses, that at the date of Smith's deed, even if it includes the disputed land, and even if it be conceded that Bryant's deed does not include it, Bryant was in the actual, adverse, open, visible possession of it and had been continuously in such possession from the date of Davidson's survey of the line between him and Hamilton (now Smith's land). When Hamilton's above answer is viewed in the light of all of his testimony, plainly his answers to questions, subsequently propounded to him on both direct and cross-examination, show that at the time he executed and delivered

the deed to Smith, he (Hamilton) was in neither the actual nor constructive possession of the disputed land.

It is entirely unnecessary to determine whether Bryant's possession of the disputed land for 15 years next before the commencement of this action was of that character and type of adverse possession, sufficient to ripen into perfect title, for the whole of the evidence establishes beyond cavil, doubt, or question, that Smith's deed was and is champertous. See section 210, Kentucky Statutes; Doyle v. Cornett, 187 Ky. 584, 219 S. W. 1059; Le Moyne v. Neal, 158 Ky. 316, 164 S. W. 964; Stephenson Lumber Co. v. Hurst et al., 259 Ky. 747, 83 S. W. (2d) 48.

On this theory alone, the evidence authorized the directed verdict for Bryant.

Wherefore, the judgment is affirmed.